Filed 6/8/15  Donaho v. County of Yuba CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| NICHOLAS DONAHO, | C067456 |
| Plaintiff and Appellant, | (Super. Ct. No. CV PM 09-0000338) |
| v. | |
| COUNTY OF YUBA et al., | |
| Defendants and Respondents. | |

A vehicle veered off a state highway and struck plaintiff Nicholas Donaho while he stood on a frontage road waiting for a bus.  He appeals from a summary judgment against his complaint for dangerous condition of public property, contending the trial court erred by ruling as a matter of law he failed to show the property was in a dangerous condition.  We disagree with plaintiff's contention and affirm the judgment.

1

FACTS

State Route 70 (SR 70) runs roughly north and south through Yuba County. In the Linda and Olivehurst areas, the highway consists of two southbound lanes and two northbound lanes, separated by a median. SR 70's speed limit in this area is 65 miles per hour.

Chestnut Road, SR 70's frontage road in this area, runs parallel to, and immediately west of, SR 70 for approximately one mile. The distance between the outermost edge of SR 70's southbound driver's lane and the outermost edge of Chestnut Road's northbound lane is 37.5 feet. Buffer land and a chain-link fence separate the two roads. A row of eucalyptus trees grows in the buffer land.

Defendant Yuba-Sutter Transit Authority (YSTA) maintains a bus stop on Chestnut Road's east side, or the side of Chestnut Road closest to SR 70. The bus stop is a pole with a sign located in dirt and gravel a few feet east of the paved edge of Chestnut Road's northbound lane and within one foot of the chain-link fence. The distance between the bus stop and the outermost edge of SR 70's southbound driver's lanes is either 29.8 feet (according to YSTA's expert), or 28 feet seven inches (according to plaintiff's expert).[1]

On the morning of May 28, 2008, Chang Yer Vang was driving his 1999 Toyota van southbound on SR 70. He was traveling in the fast, or left, lane at about 60 or 70 miles per hour. He noticed a truck merging into his lane in front of him. Fearing the truck would hit him, he accelerated to avoid a collision. His van did not respond properly and began to rock back and forth. Vang steered to the left and onto the highway's gravel inner shoulder. He then overcorrected to the right and traveled across the fast lane, the slow lane, and the outer shoulder. Vang's van hit a signpost, drove off the highway, hit

---

[1] Plaintiff emphasizes the distance between the bus stop and SR 70 is 22 feet, but this measurement excludes SR 70's paved shoulder of six feet seven inches.

one of the eucalyptus trees in the buffer land, crashed through the chain-link fence, and hit plaintiff while he stood at the Chestnut Road bus stop waiting for a bus.

CASE HISTORY

Plaintiff and his wife filed an action for damages against Vang; the State of California (the State); YSTA and its member agencies, the Cities of Marysville and Yuba City and the Counties of Yuba and Sutter (collectively YSTA); and the company YSTA retained to provide bus service, Veolia Transportation Services, Inc. (Veolia).  In his second cause of action, plaintiff alleged YSTA was liable under Government Code section 835 for creating a dangerous condition of public property.[2]  YSTA allegedly created the dangerous condition by:  (1) locating the bus stop on Chestnut Road in close proximity to SR 70; (2) not providing barriers or protection to persons using the bus stop from foreseeable highway traffic leaving SR 70; (3) locating the bus stop too close to SR 70 where vehicles travel in excess of 65 miles per hour; and (4) positioning the bus stop so that patrons waiting for a bus waited with their backs toward SR 70 unable to anticipate or be warned of vehicles leaving SR 70.

In his third cause of action, plaintiff alleged YSTA and Veolia acted as common carriers by providing mass transportation services, and they breached their heightened duty of care as common carriers by establishing the bus stop in a dangerous location, made dangerous by the factors listed above under plaintiff's second cause of action.

In his fifth cause of action, plaintiff alleged Yuba County, as the owner of Chestnut Road and its adjacent property, created a dangerous condition of public property by placing or authorizing the Chestnut Road bus stop in close proximity to SR 70.

Plaintiff also alleged the State had created a dangerous condition of public property by negligently designing and maintaining SR 70's center median, causing Vang

---

[2]      Further undesignated section references are to the Government Code.

3

to lose control of his vehicle, and by not installing some type of barrier or sufficient recovery space between SR 70 and Chestnut Road to prevent a car from penetrating Chestnut Road.

The State moved for summary judgment, contending design immunity shielded it from liability because the alleged cause of plaintiff's injury – lack of a barrier between SR 70 and Chestnut Road; insufficient recovery space between SR 70 and Chestnut Road; and/or a negligently designed, constructed, or maintained center median – was the product of a reasonable design approved in advance by discretionary authority.

The State also contended SR 70 was not dangerous as a matter of law under sections 830.2 and 835 because any risk created by the condition of SR 70 was trivial and insubstantial when SR 70 and the adjacent property was used with due care. The conditions plaintiff contended were dangerous were all common highway features. In addition, although some 69 million vehicles drove southbound on SR 70 and passed the accident location during the past 10 years, there were no other reports of a vehicle crossing over SR 70 to Chestnut Road and hitting a pedestrian, bicyclist, or vehicle.

The trial court granted the State's motion. It ruled the State enjoyed design immunity. It also held there was no dangerous condition of public property because the risk created by SR 70's condition was trivial and insubstantial. Plaintiff did not appeal this ruling.

YSTA and Yuba County filed motions for summary judgment, claiming the bus stop location was not a dangerous condition of public property as a matter of law, design immunity shielded them from liability, and plaintiff could not establish common carrier liability. YSTA, Yuba County, and plaintiff requested the trial court to take judicial notice of, and all parties relied upon, the evidence submitted in the State's motion for summary judgment. The trial court granted the requests and admitted the evidence.

Following a hearing, the trial court granted YSTA and Yuba County's motions for summary judgment. The court ruled the risk of an accident at the bus stop of the type

4

that injured plaintiff was so unusual, unforeseeable, and trivial when SR 70 was used with due care that it demonstrated a lack of dangerous condition of public property as a matter of law. It also ruled that any notice Yuba County received from other accidents that occurred nearby would not have put the county on notice of the possibility of the type of harm plaintiff suffered. The court further determined YSTA and Veolia were not liable under a theory of common carrier negligence because plaintiff failed to prove he was a passenger at the time of his injury.[3]

Plaintiff appeals from the judgments entered in favor of YSTA and Yuba County.[4]

DISCUSSION

I

*Standard of Review*

A trial court will grant summary judgment where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. A defendant moving for summary judgment must prove the action has no merit. He does this by showing plaintiff cannot establish one or more elements of his cause of action or that there is a complete defense to the cause of action. Plaintiff then bears the burden of showing a triable issue of material fact exists as to that cause of action or defense. (Code Civ. Proc., § 437c, subds. (c), (*o*)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843, 849-850.)

On appeal, we exercise our independent judgment. (*Starzynski v. Capital Public Radio, Inc.* (2001) 88 Cal.App.4th 33, 37.) In determining whether there is a triable issue of material fact, we consider all the evidence set forth by the parties except that to which objections have been made and properly sustained. (Code Civ. Proc., § 437c, subd. (c);

---

**3** Although the court ruled in favor of Yuba County, it rejected Yuba County's claim of design immunity, as allowing a bus stop on its property was not an element of design.

**4** Plaintiff's wife, Vang, the State, and Veolia are not parties to this appeal.

5

*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 334.)  We resolve evidentiary conflicts, doubts, or ambiguities in the opposing party's favor.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

## II

### *Dangerous Condition of Public Property*

Plaintiff contends the trial court erred by concluding as a matter of law the location and orientation of the bus stop created a trivial risk of injury.  He also claims he introduced sufficient evidence to create triable issues of fact on all of the elements of dangerous condition of public property.  We conclude the trial court correctly determined the risk of injury was trivial, and we affirm on that basis without addressing the parties other arguments.[5]

Section 835 sets forth the elements a plaintiff must establish to recover for injury from a dangerous condition of public property:  "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that [1] the property was in a dangerous condition at the time of the injury, [2] that the injury was proximately caused by the dangerous condition, [3] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and [4] that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

---

[5]     YSTA contends plaintiff's argument is barred by collateral estoppel because it was rejected by the trial court when it granted the State summary judgment.  The issues between the two motions, though similar, are not identical.  The State argued SR 70 was not a dangerous condition of public property.  Plaintiff argues the bus stop's location and configuration in relation to SR 70 is a dangerous condition, even though SR 70 may not itself be a dangerous condition.

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."  (§ 835.)

For purposes of section 835, a " '[d]angerous condition' " is "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or *adjacent property* is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a), italics added.)[6]

"As a general rule, the issue of whether a given set of facts and circumstances amounts to a dangerous condition poses a question of fact.  (*Dominguez v. Solano Irrigation Dist.* (1991) 228 Cal.App.3d 1098, 1103.)  Nevertheless, that question may be decided as a matter of law if no reasonable person could conclude the property's condition is dangerous as that term is statutorily defined.  (*Ibid.;* accord, *Schonfeldt v. State of California* (1998) 61 Cal.App.4th 1462, 1465; *Gray v. America West Airlines, Inc.* (1989) 209 Cal.App.3d 76, 82–83, 86.)  In such cases, summary judgment is proper. (*Mathews v. City of Cerritos* (1992) 2 Cal.App.4th 1380, 1382 (hereafter *Matthews*); *Davis v. City of Pasadena* [(1996) 42 Cal.App.4th 701,] 704.)  '[T]he plaintiff has the burden to establish that the condition is one which creates a hazard to persons who foreseeably would use the property with due care.' (*Mathews, supra,* 2 Cal.App.4th at p. 1384; see Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1995 ed.) foll.

---

[6]     Responding to a question from the bench during oral argument, plaintiff's counsel stated the issue of using property with due care concerned how plaintiff used the bus stop. Counsel's response was inadequate.  The issue before us is whether a condition of the bus stop creates a substantial risk of injury when either the bus stop or "adjacent property" – SR 70 – is used with due care in a manner in which it is reasonably foreseeable either property will be used.

7

§ 830, p. 298.)[7]" (*Biscotti v. Yuba City Unified School Dist.* (2007) 158 Cal.App.4th 554, 558-559 (*Biscotti*).)

"[A] condition is *not* a dangerous condition within the meaning of the Government Code 'if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used.' (§ 830.2) The intent of these statutes 'is to impose liability only when there is a substantial danger which is not apparent to those using the property *in a reasonably foreseeable manner with due care.* [Citations.]' [Citation.]" (*Biscotti, supra,* 158 Cal.App.4th at p. 558, original italics.)

We agree with the trial court that plaintiff's evidence failed as a matter of law to show the location and configuration of the bus stop created a dangerous condition of public property. No reasonable person would conclude, based on the evidence, that the bus stop's location and configuration in relation to SR 70 creates a substantial risk of injury when the bus stop and SR 70 are used with due care in a manner in which it was reasonably foreseeable they would be used.

Plaintiff attempted to establish the bus stop was dangerous by showing similar accidents had occurred along the stretch of SR 70 that parallels Chestnut Road, by deposition testimony from the public employee who selected the bus stop's location, and by expert testimony claiming the bus stop was dangerous. The trial court sustained all of

---

**7** "[C]ourts are required to determine[] that there is evidence from which a reasonable person could conclude that a substantial, *as opposed to a possible*, risk is involved before they may permit the jury to find that a condition is dangerous." (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (2012 ed.) foll. § 830.2, p. 28, italics added.)

YSTA's objections to plaintiff's evidence, but it nonetheless considered the evidence in the alternative. We consider it as well.

From 1998 through 2008, approximately 69,220,000 vehicles passed by the accident site going southbound on SR 70. Plaintiff introduced evidence showing that from 1999 through 2008, there were 22 collisions (including this one) involving vehicles traveling southbound on the one-mile section of SR 70 parallel to Chestnut Road that veered off onto the highway's right shoulder or beyond. Seven of those accidents occurred on entrance ramps and exit ramps, leaving plaintiff's expert witness to admit those accidents were substantially different from plaintiff's accident and should be eliminated from analysis. Of the remaining 15 accidents, nine vehicles veered off SR 70 (not including plaintiff's accident). Of those nine, six struck trees beyond the highway's right shoulder, two passed through the trees and struck the chain-link fence, and one struck a sign, a tree, and the fence.

Plaintiff's accident was the only accident among these 22 accidents that involved a vehicle piercing the chain-link fence. Plaintiff admits his accident was also the only such incident to have ever occurred at the bus stop since it was established in 1993.

This evidence of previous accidents is insufficient to establish the bus stop was a dangerous condition. "It is well settled that before evidence of previous accidents may be admitted to prove the existence of a dangerous condition, it must first be shown that the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in question. [Citations.] . . . [¶] While there must be substantial similarity to offer other accident evidence for any purpose, a stricter degree of substantial similarity is required when other accident evidence is offered to show a dangerous condition; ' "the other accident must be connected in some way with that thing . . . ." ' (*Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 237 [].)" (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1072 (*Salas*).)

9

Plaintiff's evidence of other accidents does not meet the stricter degree of substantial similarity required for showing a dangerous condition. There is no evidence any of the accidents introduced by plaintiff, other than plaintiff's accident, was connected with the bus stop or the accident site on SR 70. None of the other accidents involved a vehicle that traveled through the chain-link fence. Out of over 69 million vehicles, only one – Vang's – traveled through the fence and injured a pedestrian on the other side. The evidence of other accidents thus explains very little about the condition of the property where the accident happened, other than to suggest the risk of the type of accident plaintiff suffered was very remote.

Although a lack of prior similar accidents is not dispositive, it is a relevant consideration, and courts have commonly held public property was not dangerous where there were few or no substantially similar prior accidents despite heavy use. (See *Salas, supra*, 198 Cal.App.4th at p. 1071 [crosswalk not dangerous where no other pedestrian-vehicle accidents occurred over 10-year period although over 30 million vehicles passed through the intersection during that time].)

Plaintiff introduced the deposition testimony of Keith Martin, the YSTA manager who selected the Chestnut Road bus stop's location. His testimony, however, did not establish the bus stop was in a dangerous condition. Plaintiff contended Martin knew of the risk of injury from placing the bus stop adjacent to SR 70 and he disregarded that risk. Martin's testimony was not so direct. When asked if it was safer to place a bus stop next to high-speed traffic or low-speed traffic, Martin stated in the form of a hypothetical that "bus stops are located next to roads. And so the higher the speed would generally have a greater risk for any pedestrian, bus stop or otherwise."

In a declaration, Martin stated he considered safety when selecting the bus stop. This included analyzing the conditions in the stop's vicinity. When asked in his deposition what he analyzed when he considered the site's safety, Martin stated, "We're looking at visibility of the stop, we're looking at access to the stop and what's in the

10

vicinity of the stop type of thing. But we – it's all a part of a balance of all the different factors." Martin also agreed it was good for safety purposes to consider an adjacent property's activity when locating a bus stop, and to insulate a prospective passenger from activity on adjacent property.

Plaintiff asserts Martin did not consider these safety factors because he did not measure the distance from the bus stop to SR 70 or research SR 70's traffic volume and history. Martin also said the fact that SR 70 was there "[u]ltimately . . . did not" play into his consideration of locating the bus stop. But these points do not dispute that Martin at some point in the process considered safety risks posed by SR 70, nor do they establish the bus stop was in a dangerous condition. That Martin may not have analyzed the site's safety in the manner plaintiff thought he should does not show the site was dangerous.

Plaintiff's use of expert testimony fares no better. Plaintiff introduced testimony from two experts. Laurence H. Neuman, P.E., a civil engineer specializing in accident causation related to roadway features, opined, "Because the fence is not designed to slow or redirect vehicles it is very foreseeable that vehicles that reach as far as the fence will be able to hit something located near the fence, such as people standing at the bus stop."

Robert Berkstresser, an expert in the bus transportation industry on evaluating and placing bus stops, opined the Chestnut Road bus stop "is dangerous because it exposes passengers to risk of injury from errant cars from SR 70." He also noted other locations that would have, in his opinion, been safer than the Chestnut Road location.

Both of these experts failed to address the first requirement of finding public property to be in a dangerous condition – whether the condition created a substantial risk of injury when the bus stop or SR 70 were used with due care in a manner in which it was reasonably foreseeable they would be used. (§ 830.2.) Mr. Neuman's opinion that the chain-link fence would not slow a vehicle, and Mr. Berkstresser's opinion that the bus stop exposed persons to a risk of injury from errant cars, do not answer whether the bus

11

stop's location and orientation created a substantial risk of injury when the bus stop and SR 70 were used with due care. Their opinions do not assist plaintiff.

Plaintiff argues it is "common knowledge" that placing a bus stop 22 feet from the edge of SR 70's pavement (more than 28 feet from the edge of SR 70's southbound driver's lane) with no barrier between the bus stop and the highway exposes bus patrons to a risk of injury from runaway vehicles, and, on that basis, the trial court should have found the risk was not trivial. However, plaintiff must show more than mere "common knowledge" of a *remote* risk in order to recover for dangerous condition of public property. Plaintiff must establish a *substantial* risk of injury when property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used. (§ 830, subd. (a).) Plaintiff's evidence did not establish persons using the bus stop on Chestnut Road incurred a substantial risk of injury when the bus stop or SR 70 were foreseeably used with due care. "Any property can be dangerous if used in a sufficiently abnormal manner; a public entity is required only to make its property safe for reasonably foreseeable careful use. [Citation.]" (*Mathews, supra,* 2 Cal.App.4th at p. 1384.)

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to defendants. (Cal. Rules of Court, rule 8.278(a).)

       NICHOLSON      , Acting P. J.

We concur:

      BUTZ        , J.

      MAURO       , J.